ANNA BROMBACHER, ADMINISTRATRIX, ETC., RESPOND-
ENT, v. JOURNEYMEN BARBERS' INTERNATIONAL
UNION OF AMERICA, LOCAL NO. 362, GARNISHEE, AP-
PELLANT.

Submitted May 17, 1929—Decided July 15, 1929.

Before Justices PARKER, BLACK and BODINE.

For the appellant, *Samuel Tartalsky.*

For the appellee, *Irwin Rubenstein.*

PER CURIAM.

This is an appeal of a local lodge in a garnishee proceed-
ing after judgment in attachment, against the national
body.

Plaintiff is the widow of William Brombacher, who was a
member of the local and whose estate, or widow, was entitled
to death benefits from the national by reason of monthly
payments to the local, in the usual manner. We gather from
the case and briefs, though the point seems now unimportant,
that William Brombacher did not pay his dues on the first
of the month as required by the by-laws, but that the local
advanced for him to the national, as in the Peterson case,
98 *N. J. L.* 196. As the dues were ultimately paid, that
question is out of the case at this stage. We gather also
that the national refused to pay the death benefit and the

widow as beneficiary sued out an attachment in the district court against it as a non-resident debtor domiciled in Indiana, that the case was contested, and that the widow had a judgment. The national seems to have appeared specially only.

The writ of attachment was executed against funds in the hands of the local and in the physical custody of its treasurer, Anthony Danza, and both were included in the *scire facias,* but at the end of the case Danza was discharged, by consent of the plaintiff's attorney. The theory of the *scire facias,* as well as of the writ of attachment, was that inasmuch as the local was required under the regulations of the order to collect certain initiation fees and dues, and as, out of the dues, the sum of eighty cents per month for each member was to be remitted by the local to the national, and as since the levy of the writ more than $500 had come into the hands of the treasurer of the local for this purpose, this credit in favor of the national was liable to the attachment and subject to be paid to the plaintiff under the *scire facias.* The point was raised early in the case by motion to quash the attachment, but passed by the court (6 *N. J. Mis. R.* 1069), and is now the sole remaining question in the case, viz., whether a sum of money collected by the local for account of the national, and actually in the hands of the local for that purpose, is a debt, or a right and credit, which may be attached as the property of the national, and the local compelled to pay, and receive or be entitled to credit with the national for such payment when made. Danza, the treasurer, testified that he had the money in his hands as the property of the national, and whatever may be the rule as to the right of the national to sue the local for the dues, the right of the national to sue Danza as its own agent for money had and received would seem to be fairly clear.

As between the national and the local, we have in this state the decisions in the leading case of *National Council* v. *State Council,* 64 *N. J. Eq.* 470, and several times reported in its various phases. Counsel for appellant maintain that that case decided that under the conventional relations of the national and local bodies, the national body would not be able

to enforce the payment of moneys collected for its account by judicial proceedings. But the general decision in the case as reported in 64 *N. J. Eq.* is to the contrary, as a reading of the headnote will show. It was a bill to require the payment of money collected, on the theory of a trust in which the local was trustee and the national the *cestui;* and Vice-Chancellor Pitney held that if the money were actually collected by the local for the benefit of the national, the bill would lie, but that the complainant had failed on its proof. If it could collect in equity under such circumstances, we see no good reason why it should not collect at law; for the very theory of the action for money had and received to the plaintiff's use is a trust theory. In the present case, it is clear from testimony and admissions that the two organizations were on friendly terms and not at loggerheads as in the cited case; that the treasurer regularly sent forward the checks of the parent association for dues collected for its account; and we think it would be unreasonable to say that in that posture of affairs the parent association could not sue for its own. Deeming that it could, we conclude that the fund was attachable and that the present defendant-appellant was accountable for it to the plaintiff on a *scire facias.*

The judgment will accordingly be affirmed.